**UNITED STATES DISTRICT COURT**
**District of Kansas**
(Wichita Docket)

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.                                                            CASE NO. 23-M-6293-01-BGS

**OMAR SINHUE CEBREROS,**
**MARIO DE JESUS AHUMADA-ADAME,**

**Defendants.**

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

**POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE**
**[21 U.S.C. § 841(a)(1)]**

On or about November 9, 2023, in the District of Kansas, the defendant,

**OMAR SINHUE CEBREROS,**
**MARIO DE JESUS AHUMADA-ADAME,**

knowingly and intentionally possessed with the intent to distribute a mixture or substance containing a detectable amount of Cocaine, a Schedule II controlled substance. In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

1

## COUNT 2

**POSSESSION OF FENTANYL WITH INTENT TO DISTRIBUTE**
**[21 U.S.C. § 841(a)(1)]**

On or about November 9, 2023, in the District of Kansas, the defendant,

**OMAR SINHUE CEBREROS,**
**MARIO DE JESUS AHUMADA-ADAME,**

knowingly and intentionally possessed with the intent to distribute a mixture or substance containing a detectable amount of Fentanyl, a Schedule II controlled substance. In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNT 3

**Possession of methamphetamine with intent to distribute**
**[21 U.S.C. § 841(a)(1)]**

On or about November 9, 2023, in the District of Kansas, the defendant,

**OMAR SINHUE CEBREROS,**
**MARIO DE JESUS AHUMADA-ADAME,**

knowingly and intentionally possessed with the intent to distribute a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance. In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

I further state that I am a Task Force Officer with the Drug Enforcement Administration, and that this Complaint is based upon the following facts:

See accompanying Affidavit, which is incorporated by reference as though set out in full herein and offered in support of a find that probable cause exists to believe the defendants, OMAR SINHUE CEBREROS and MARIO DE JESUS AHUMADA-ADAME, committed the offense set forth in this Complaint.

_____
DOUGLAS CARR
Task Force Officer
Drug Enforcement Administration

Sworn to before me and subscribed Via ZOOM this 17th day of November 2023, at Wichita, Kansas.

After reviewing this Complaint and the accompanying Affidavit, there is probable cause to believe that the defendants, OMAR SINHUE CEBREROS and MARIO DE JESUS AHUMADA-ADAME, committed the offenses set forth in this Complaint.

_____
HONORABLE BROOKS SEVERSON
United States Magistrate Judge
District of Kansas

## PENALTIES

**Counts 1- 3: 21 U.S.C. § 841(a)(1), (b)(1)(C).**
**Possession with Intent to Distribute Cocaine, Fentanyl and Methamphetamine**

- Punishable by a term of imprisonment of up to 20 years. 21 U.S.C. § 841(b)(1)(C).
- A term of supervised release of at least three (3) years. 21 U.S.C. § 841(b)(1)(C).
- A fine not to exceed $1 million. 21 U.S.C. § 841(b)(1)(C).
- A mandatory special assessment of $100.00. 18 U.S.C. § 3013(a)(2)(A).

If the defendant commits such a violation after a prior conviction for a felony drug offense has become final, the penalties are:

- Punishable by a term of imprisonment of up to thirty (30) years. 21 U.S.C. § 841(b)(1)(C).
- A term of supervised release of at least six (6) years. 21 U.S.C. § 841(b)(1)(C).
- A fine not to exceed $2 million. 21 U.S.C. § 841(b)(1)(C).
- A mandatory special assessment of $100.00. 18 U.S.C. § 3013(a)(2)(A).

# AFFIDAVIT

# IN SUPPORT OF COMPLAINT

I, Douglas W. Carr, having been duly sworn, state the following:

## INTRODUCTION

- 1. I am a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice, and as such I am empowered under Title 21, United States Code, Section 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure, and arrest warrants. I am currently employed as a Lieutenant with the Kansas Highway Patrol (KHP) and have been so employed for over twenty-four (24) years. I have served in current assignment with the KHP, Group Supervisor with the United States Drug Enforcement Administration (DEA), for four (4) years.

2. In addition to the initial training, I received courses of instruction from the KHP, and from a drug interdiction conference sponsored by the Drug Interdiction Assistance Program (DIAP) and El Paso Intelligence Center (EPIC), and training provided by the DEA relating to investigative techniques and the conducting of narcotics and drug trafficking investigations. I have participated in and have conducted investigations which have resulted in the arrests of individuals who have received and distributed controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs.

3. On November 9, 2023, Kansas Highway Patrol (KHP) Trooper Robert Krause stopped a 2018 Freightliner truck tractor bearing California registration YP40964 pulling a trailer bearing Maine registration 307280Z. The reason for the stop was routine CVSA (Commercial Vehicle Safety Alliance) Level II truck inspection. The stop occurred on U.S. Highway 50 at mile post 329 in Chase County, KS.

4. The driver, MARIO DE JESUS AHUMADA-ADAME and passenger OMAR SINHUE CEBREROS were both identified by Mexican Identification. Both suspects are citizens of Mexico legally in the United States on a work Visa. They were traveling from San Diego, CA to Erlanger, KY.

5. During the routine CVSA inspection, Trooper Krause and later LT Scott Walker observed several signs of possible criminal activity including:
- AHUMADA originally stated he drove the Commercial motor vehicle (CMV) across the U.S./Mexico border and later changed his story stating he picked up the truck in San Diego after driving his personal car to the U.S. from Mexico.
- Indirect travel route. Traveling from southern California to Erlanger, KY. AHUMADA was traveling to Erlanger, KY should have been on I-40, which is a 4-lane interstate. By driving on U50, AHUMADA was taking 2-lane highways traveling through multiple towns. The average operating cost of a CMV is over two dollars per mile.
- This is AHUMADA's first load in November stating he doesn't want to drive in winter. CMV drivers need to stay on the road to make money especially when splitting cost with another driver.
- The CMV is not making money when not driving. AHUMADA has two children, and his wife does not work, it appears AHUMADA must be making money by other means.
- During the inspection, AHUMADA immediately pointed out he had to wedge a piece of material below the electrical pigtail on the trailer to get the lights to work. Drivers do not point out violations as it would go on the inspection report and possibly cost the driver/company money. AHUMADA appeared to be overly cooperative with the Trooper, which traffickers of narcotics typically do to keep from being detected as criminal.
- Extreme nervousness that Trooper Krause does not see in the innocent motoring public. The nervousness was less when AHUMADA talked about subjects not related to this trip.

6. After completing the inspection Trooper Krause asked AHUMADA for consent to search the truck and trailer. AHUMADA consented to the search of the truck and during the search the following was located:
- (3) brick shaped plastic wrapped packages containing a white powder that tested positive for Fentanyl and the total weight was 7.3 pounds.
- (23) kilo sized plastic wrapped packages containing a white powder that tested positive for

cocaine and the total weight was 60.3 pounds.

- (22) vacuum sealed clear plastic wrapped packages containing a white clear crystal chunks that tested positive for crystal methamphetamine and the total weight was 40.3 pounds.

7. Several packages were tested using a Thermoscientific TruNarc and tested positive for each respective suspected substance. All packages were located in bookbags, two large bags and box secured in the truck tractor under the sleeper bunk. None of the packages had Kansas Drug Tax Stamps affixed to outside of the package.

8. After the discovery and positive field test of the suspected narcotics both MARIO DE JESUS AHUMADA-ADAME and OMAR SINHUE CEBREROS were taken into custody. Both AHUMADA and CEBREROS were then read their constitutional and statutory rights and warnings (*Miranda*), which they knowingly and voluntarily waived and agreed to speak with agents without an attorney present. In a post-miranda interview with TFO Carr, CEBREROS stated the following:

- CEBREROS stated he knew the drugs were in the truck and they were destined for Kansas.
- CEBREROS stated he didn't know the city they were traveling to but had been sent an address for a gas station by the source of supply (s.o.s.) in Mexico.
- CEBREROS stated his "colleague" had the address.
- CEBREROS stated he was being paid $150 per pound but did not know how much weight was in the truck.
- CEBREROS believed the drugs were crystal methamphetamine and cocaine.
- CEBREROS loaded the drugs in the semi with his partner AHUMADA.
- CEBREROS stated he picked up the load in L.A. and have been driving since.

- CEBREROS stated he does not know who the load is going to.

9. In a post-Miranda interview, AHUMADA told TFO Danny Case the following:

- AHUMADA stated he is 32 years old and has one child.
- AHUMADA stated he has a significant other who lives in Mexico and don't want to give her name.
- AHUMADA stated he has been driving truck-tractors for several years.
- AHUMADA stated he picked up the Cocaine, Meth, and Fentanyl at 3 pm in Los Angeles on 11/8/23.
- AHUMADA stated he doesn't know who he picked the drugs up from, they talked to my partner.
- AHUMADA stated he is doing this for the money.
- AHUMADA stated that a guy in Mexico pays him $8,000 per trip.
- AHUMADA stated they were taking this load to St. Louis.
- AHUMADA wasn't supposed to stop anywhere else.
- AHUMADA can't say or give any more information because of who he works for.
- AHUMADA stated that he can't talk about the person who gave me the drugs.
- AHUMADA stated that they will find my family.
- AHUMADA stated that all I know we were to pick it up in LA then take it to St. Louis.
- AHUMADA stated he took I-10 from LA to I-40, take I-40 to Tucumcari NM, from there take US-54 Hwy. to US-50 Hwy. to avoid the Toll ways. AHUMADA stated he was planning on taking I-35 from Emporia to Kansas City, then onto I-70 to St. Louis.
- AHUMADA stated that he was awaiting further instructions on where to go in St. Louis.

- AHUMADA stated he was expecting us in St. Louis at 5 am.

- AHUMADA stated that they were messaging his co-pilot.

- AHUMADA stated he communicates with the guy (s.o.s.) in Mexico and drop off people via WhatsApp, phone calls, and text message.

- AHUMADA stated that he has completed one other delivery to St. Louis in October.

Signed and Subscribed this 17th day of November, 2023

Doug Carr
DEA-Task Force Officer